W-1

# United States District Court

__EASTERN__ DISTRICT OF __MICHIGAN__

UNITED STATES OF AMERICA

V.

D-1  NICHOLAS TIMOTHY KARBGINSKY
D-2  ERIC LANGLOIS
D-3  JUSTIN JAMES SHARP
(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:

**06-30033**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __11/30/05__ in __Wayne__ county, in the Eastern District of Michigan defendant(s) did, (Track Statutory Language of Offense)

knowingly, intentionally and unlawfully conspire to possess with intent to distribute ecstasy, a Schedule I controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 846__.
I further state that I am a(n) Special Agent with the Drug Enforcement Administration and that this complaint is based on the following facts:

(SEE ATTACHED AFFIDAVIT)

FILED
JAN 19 2006
CLERK'S OFFICE
DETROIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Michael Johns

Sworn to before me and subscribed in my presence,

__January 19, 2006__                                  at __Detroit, Michigan__
Date                                                       City and State

__U.S Magistrate Judge Virginia M. Morgan__
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

Affiant, Special Agent Michael Johns, being duly sworn, deposes and states the following:

1. Affiant is a special Agent of the Drug Enforcement Administration (DEA) for the past 3 years. Affiant is a law enforcement officer empowered to conduct investigations and make arrests for narcotic violations of Title 21, United States Code.

2. On October 24, 2005, MSP Down River Area Narcotics Organization (DRANO) Det. Ronald Pongracz, acting in an undercover capacity, met with a white male who identified himself as "NYK" and another white male who identified himself as "Justin" in Inkster, Michigan to negotiate the purchase of ecstasy. "NYK" was later identified as <u>NICHOLAS TIMOTHY KARBGINSKY</u>. "Justin" was later identified as <u>JUSTIN SHARP</u>.

3. On November 29, 2005, Det. Pongracz, while acting in an undercover capacity, telephonically contacted with KARBGINSKY who stated that he had 500 tablets of ecstasy for Det. Pongracz. Det. Pongracz and KARBGINSKY made arrangements to meet and conduct the transaction the following day.

4. On November 30, 2005, Det. Pongracz telephonically contacted KARBGINSKY and agreed to meet in the parking lot of the All Around Bar in Taylor, Michigan. Det. Pongracz told KARBGINSKY that he was bringing his friend Mike, referring to SA Michael Johns, to talk to him about purchasing acid (LSD).

5. On November 30, 2005, at approximately 4:35pm, surveillance observed KARBGINSKY and SHARP leave 1201 Deering, Garden City, Michigan in a gold 2004 Ford Taurus, Michigan license VKA472 registered to Kelly Ruth Sharp, 664 Highland Road, Whitmore Lake, MI, with SHARP driving.

6. At approximately 4:37pm, KARBGINSKY called Det. Pongracz and stated that he was going to get "it" now, referring to the 500 tablets of ecstasy.

7. At approximately 4:40pm, surveillance observed SHARP and KARBGINSKY arrive at 25721 New York, Dearborn Heights, Michigan, back into the driveway and open the trunk.

8. At approximately 4:48pm, surveillance observed SHARP and KARBGINSKY leave 25721 New York, Dearborn Heights, MI and travel towards the All Around Bar, in Taylor, Michigan with no other stops.

1

9. At approximately 4:53pm, KARBGINSKY called Det. Pongracz and stated that he wanted to enter his vehicle and for Det. Pongracz to drive down the road while conducting the transaction while "Justin" referring to Justin SHARP, followed. KARBGINSKY stated that he had the ecstasy in a safe in a back pack and needed to remove the ecstasy from the safe.

10. At approximately 4:55pm, SHARP and KARBGINSKY arrived at the All Around Bar and SA Michael Johns, acting in an undercover capacity and riding with Det. Pongracz, observed KARBGINSKY exit the gold Taurus and remove a backpack from the trunk of the gold Taurus. KARBGINSKY then entered the undercover vehicle.

11. Det. Pongracz then introduced KARBGINSKY to SA Johns and KARBGINSKY asked SA Johns if he was the one interested in purchasing LSD. KARBGINSKY proceeded to tell SA Johns that he could get LSD for approximately $900.00 per sheet with 100 "hits", referring to dosage units per sheet. KARBGINSKY then stated that he was able to get multiple sheets or books of LSD. KARBGINSKY stated that he tried the LSD before and it was good and the person to ask was his friend Justin who was following them, referring to Justin SHARP, who was very familiar with the LSD.

12. At approximately 5:00pm, KARBGINSKY then opened the backpack and safe and handed Det. Pongracz 5 small baggies each containing 100 tablets of ecstasy. Det. Pongracz handed KARBGINSKY $4,500.00 in pre-recorded DEA buy funds and KARBGINSKY counted the money and said they were "straight", meaning there was $4,500.00.

13. Upon completion of the transaction, KARBGINSKY stated that he could get LSD, mushrooms, and ecstasy and the more that was ordered, the better the price would be.

14. At approximately 5:14pm, surveillance, still maintained on KARBGINSKY and SHARP, observed them arrive at 25721 New York, Dearborn Heights, MI, the residence of Eric Langlois, and leave at approximately 5:17 pm.

15. The ecstasy later tested positive for the presence of MDMA.

16. On December 12, 2005, Det. Pongracz received a call from KARBGINSKY who stated that he has 500 tablets of ecstasy for Det. Pongracz to purchase.

17. On December 14, 2005, at approximately 3:51pm, surveillance was established at 25721 New York, Dearborn Heights, MI, and observed a white 2002 Ford Explorer, with Michigan license ABB9999, registered to Eric Langlois in the driveway. Surveillance then observed a grey Ford Taurus pull into the driveway and observed KARBGINSKY exit the driver side of the vehicle and walk up to

the white Explorer empty handed. KARBGINSKY met with the driver of the Explorer, walked back to his vehicle carrying something in his hands, and entered his Taurus. KARBGINSKY and the white Explorer, being driven by LANGLOIS, left the residence and traveled in separate directions.

18. KARBGINSKY was then surveilled to and arrived at Kirby Church at 25528 Wick Road, Taylor, MI, at approximately 4:05pm. KARBGINSKY entered the undercover vehicle with Det. Pongracz, opened a Newport cigarette box, removed a clear baggie containing 450 blue tablets and handed them to Det. Pongracz and Det. Pongracz handed KARBGINSKY $3,800.00 in pre-recorded DEA buy funds.

19. Det. Pongracz and KARBGINSKY made arrangements for the purchase of 50 tablets of ecstasy and 300 dosage units of LSD for later in the week with SA Johns purchasing the LSD.

20. At approximately 4:07pm, KARBGINSKY left the Kirby Church parking lot and drove down the street to his cousin's address 25241 Mary Street, Taylor, Michigan, where surveillance observed KARBGINSKY meet with a white SUV who parked behind KARBGINSKY. Agents believe this vehicle to be the same vehicle being driven by LANGLOIS that KARBGINSKY met with prior to the transaction at 25721 New York, Dearborn Heights, MI.

21. The 450 tablets of ecstasy later tested positive for the presence of MDMA.

22. On December 19, 2005, Det. Pongracz telephonically contacted KARBGINSKY and KARBGINSKY stated that he had 50 tablets of ecstasy for him and that he was trying to get the 300 hits of LSD for SA Johns and they could meet at 6:45pm.

23. At approximately 6:45pm, KARBGINSKY called Det. Pongracz and stated that he has been trying to contact his supplier for LSD and that he was unable to get the LSD at that time.

24. At approximately 7:14pm, surveillance observed KARBGINSKY arrive at and enter 25721 New York, Dearborn Heights, Michigan.

25. At approximately 7:17pm, surveillance observed KARBGINSKY exit 25721 New York, Dearborn Heights, Michigan and entered the front passenger side of the ford Taurus and leave.

26. At approximately 7:30pm, surveillance was maintained on KARBGINSKY and KARBGINSKY arrived at the Kirby Church parking lot 25528 Wick Road, Taylor, Michigan.

27. KARBGINSKY exited the Taurus and entered the undercover vehicle with Det. Pongracz and SA Johns, both acting in undercover capacities.

28. KARBGINSKY began apologizing for not getting the LSD and stated that he would have it later that night or the next day. KARBGINSKY handed Det. Pongracz a small baggie containing 50 blue tablets. Det. Pongracz then handed KARBGINSKY $450.00 in pre-recorded DEA buy funds.

29. At approximately 7:35pm, KARBGINSKY exited the undercover vehicle and re-entered the Ford Taurus in the front passenger side. SA Johns observed an unidentified female in the back seat and Justin SHARP as the driver of the Ford Taurus.

30. At approximately 7:43pm, surveillance was maintained on KARBGINSKY and SHARP and observed them arrive at and KARBGINSKY enter 25721 New York, Dearborn Heights, Michigan.

31. At approximately 7:45pm, KARBGINSKY then exited the residence, re-entered the Ford Taurus and left the area.

32. On December 21, 2005, Det. Pongracz received a call from KARBGINSKY who asked if SA Johns still wanted to purchase the 300 hits of acid (LSD). Det. Pongracz stated that he did and agreed to meet the following day.

33. On December 22, 2005, at approximately 1:40pm, surveillance observed a green Ford Taurus arrive at 25721 New York, Dearborn Heights, Michigan, and KARBGINSKY exit the driver side of the Taurus and enter the residence.

34. At approximately 1:50pm, surveillance observed KARBGINSKY exit 25721 New York, enter the Ford Taurus and leave the area under constant surveillance.

35. At approximately 2:00pm, KARBGINSKY called Det. Pongracz, stated that he was enroute, and wanted to enter Det. Pongracz's vehicle and for him to drive down the road while he conducts the transaction with SA Johns for 300 hits of acid.

36. At approximately 2:08pm, surveillance was still maintained on KARBGINSKY who arrived at the parking lot of Kirby Church. KARBGINSKY then entered the undercover vehicle with Det. Pongracz and SA Johns, both acting in undercover capacities.

37. Det. Pongracz drove west on Wick Road and KARBGINSKY showed Det. Pongracz and SA Johns a Christmas present wrapped which had "To: Ron, From: Nick, Merry X-mas" on it. KARBGINSKY stated that he wrapped the sheets of acid as a present in case he was pulled over by the police. KARBGINSKY then

4

unwrapped the present which revealed a music compact disk (CD) and then opened the CD which had 3 pieces of foil approximately 2 inches by 2 inches in size. KARBGINSKY opened one of the pieces of foil and revealed a white colored piece of paper with lines drawn on it. KARBGINSKY additionally stated that his "boy" wrapped the sheets of acid for him in the foil.

38. Based on your Affiant's training and experience, your Affiant believes that when KARBGINSKY is referring to his "boy" that he is referring to Eric LANGLOIS who is his source of supply for the LSD and ecstasy. Additionally, KARBGINSKY has traveled to the residence of LANGLOIS just prior to several of the ecstasy deals that KARBGINSKY has made with the undercover agents, and KARBGINSKY was observed in the past meeting with LANGLOIS in his white Explorer in LANGLOIS'S driveway and/or 25721 New York, Dearborn Heights, MI.

39. KARBGINSKY told SA Johns not to touch the acid so he did not get high and asked SA Johns to sell him 2 hits so he can use them when he opens presents on Christmas. SA Johns declined to sell him any and KARBGINSKY handed SA Johns the 3 sheets of acid. SA Johns then handed KARBGINSKY $2,700 in pre-recorded DEA buy funds and KARBGINSKY then counted the money and said that it was all there.

40. At approximately 2:14pm, KARBGINSKY was then dropped off at his vehicle at Kirby Church and left the area.

41. The sheets of acid (LSD) later tested positive for the presence of LSD and the marks signifying dosage units were counted and totaled 300.

42. At approximately 2:17pm, KARBGINSKY then called Det. Pongracz and asked Det. Pongracz if he wanted to have a standing order of 500 tablets of ecstasy per week and Det. Pongracz stated that they would have to negotiate the price.

43. A check through law enforcement indices and contact with local law enforcement indicates the following criminal history for Nicholas KARBGINSKY:

> 08-12-2005 arrested loitering where narcotics are sold. Disposition unknown.
> 01-01-2006 arrested disorderly conduct and resisting arrest: not yet disposed.

44. A check through law enforcement indices indicates no criminal history for Eric LANGLOIS.

45. A check through law enforcement indices indicates the following criminal history for Justin SHARP:

       10-27-2005 plead guilty to felony Controlled Substance – Delivery/Manufacture Methamphetamine. Sentenced on 12-21-2005 to 24 months probation.

46. Based on your Affiant's training and experience and on the facts detailed herein, your Affiant believes that there is probable cause to believe that Nicholas KARBGINSKY, Justin SHARP, and Eric LANGLOIS have committed offenses in violation of Title 21 USC 841(a)(1) and 846.

                                                    Special Agent Michael Johns
                                                    Drug Enforcement Administration

Sworn and Subscribed to before me this 19th day of January, 2006

Honorable Virginia M. Morgan
United States Magistrate Judge

6